1

**REESE LLP**
2   Michael R. Reese (SBN 206773)
Carlos F. Ramirez (*Pro Hac Vice* to be Submitted)
3   100 West 93rd Street, 16th Floor
New York, New York  10025
4   Telephone:  (212) 643-0500
Email:  *mreese@reesellp.com*
5                *cramirez@reesellp.com*

6   **REESE LLP**
George V. Grande (Cal. State Bar No. 316050)
7   8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
8   Telephone:  (310) 393-0070
Email:  *ggranade@reesellp.com*

9

10   **SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (*Pro Hac Vice* to be Submitted)
11   505 Northern Boulevard, Suite 311
Great Neck, New York 11021
12   Telephone:  (516) 303-0552
Email:  *spencer@spencersheehan.com*

13

14   *Counsel for Plaintiff and the Proposed Class*

15                    UNITED STATES DISTRICT COURT

16                    EASTERN DISTRICT OF CALIFORNIA

17

18   AMANDA CAUDEL, individually, and on        CASE NO.  _____
19   behalf of those similarly situated,
                                                 **CLASS ACTION COMPLAINT**
20                    Plaintiff,
                                                 **Demand for Jury Trial**
21          v.

22   AMAZON.COM, INC.,

23                    Defendant.

24

25

26

27

28

1  Plaintiff Amanda Caudel ("Plaintiff") by her attorneys alleges upon information and

2  belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

3  1.  Amazon.com, Inc. ("Defendant") is the largest American online retailer and

4  includes among its myriad services the option for consumers to **rent** or **buy** movies, television

5  shows and other media (the "Video Content") for a fee.

6  2.  In the event that a consumer "Rents" Video Content, Defendant advertises that, for

7  a fee of around $5.99, the consumer will have access to the Video Content for 30 days and then for

8  48 hours after the consumer first watches the Video Content.

9  3.  For a much higher fee of around $19.99, Defendant offers the option to "Buy" the

10  Video Content.

11  4.  Below is a representative example of the options available to a consumer on

12  Defendant's website at the digital point-of-sale:



22  5.  When a consumer chooses the option to "Buy" on the page of the Video Content by

23  clicking on the "Buy" button, the Video Content instantly becomes available in the consumer's

24  video library without the consumer needing to accept any terms and conditions pursuant to a

25  clickwrap agreement.

1

6.     Consumers navigate to their videos on Defendant's website by clicking on a link that directs them to "Your Video Purchases & Rentals."

**Your Account**

Your Account
Your Orders
Your Dash Buttons
Your Lists
Your Recommendations
Your Subscribe & Save Items
Memberships & Subscriptions
Your Service Requests
Your Prime Membership
Your Garage
Your Fanshop
Your Pets
Start a Selling Account
Register for a Business Account
Your Amazon Credit Cards
Your Content and Devices
Your Music Library
Your Amazon Photos
Your Amazon Drive
Your Prime Video
Your Kindle Unlimited
Your Watchlist
Your Video Purchases & Rentals
Your Android Apps & Devices
Switch Accounts
Sign Out

7.     The "Video Purchases & Rentals" webpage contains a collection of all available Video Content rented and purchased by Plaintiff on Defendant's website.

8.     Reasonable consumers will expect that the use of a "Buy" button and the representation that their Video Content is a "Purchase" means that the consumer has paid for full access to the Video Content and, like any bought product, that access cannot be revoked.

9.     Unfortunately for consumers who chose the "Buy" option, this is deceptive and untrue. Rather, the ugly truth is that Defendant secretly reserves the right to terminate the consumers' access and use of the Video Content at any time, and has done so on numerous occasions, leaving the consumer without the ability to enjoy their already-bought Video Content.

2

1      10.     Defendant's representations are misleading because they give the impression that

2   the Video Content is purchased – *i.e.* the person owns it -  when in fact that is not true because

3   Defendant or others may revoke access to the Video Content at any time and for any reason.

4      11.     In so representing the "Purchase" of Video Content as true ownership of the content,

5   Defendant took advantage of the (1) cognitive shortcuts made at the point-of-sale, *e.g.* Rent v. Buy

6   and (2) price of the Video Content, which is akin to an outright purchase versus a rental.

7      12.     Though some consumers may get lucky and never lose access to any of their paid-

8   for media, others may one day find that their Video Content is now completely inaccessible.

9   Regardless, all consumers have overpaid for the Video Content because they are not in fact owners

10  of the Video Content, despite have paid extra money to "Buy" the product.

11     13.     Defendant's representations that consumers are truly purchasing their Video

12  Content are designed to – and do – deceive, mislead and defraud consumers.  A real-life experience

13  listed on a Reddit post explains the disappearing Video Content issue:

3

14.     The above complaint posted around five months ago is not new news for Defendant. Indeed, Defendant has been aware for close to a decade that consumers are routinely misled by the manner in which it "sells" Video Content.

15.     A Consumer Reports article from October 16, 2012 titled That Amazon Video You Bought? You May Not Actually Be Able To Watch It (*available at* https://www.consumerreports.org/consumerist/that-amazon-video-you-bought-you-may-not-actually-be-able-to-watch-it/) discusses Defendant's unfair ability to pull "Purchased Digital Content" at any time: "This restriction isn't mentioned on the purchase page of the movie, nor is the customer given any such warning during the buying process. It's not even directly mentioned on the "Amazon Instant Video Usage Rules" page."  The article goes on to say that, "We've written

4

Amazon to ask why they do not make this restriction more clear during the purchasing process. If the company replies — we're not holding our breath on this one — we will update." Apparently Defendant never replied because the article was never updated to reflect that.

16.     Defendant has sold more Video Content and at substantially higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

17.     The consumer belief that they are truly owning the Video Content has a material bearing on price or consumer acceptance of Defendant's video service because consumers are willing to pay substantially more for Video Content that they believe they can access at any time and for an indefinite period.

18.     The value of the Video Content that Plaintiff and the Class members purchased and consumed was materially less than its value as represented by Defendant.

19.     Had Plaintiff and Class members known the truth, they would not have bought the Video Content from Defendant or would have paid substantially less for it.

20.     As a result of the false and misleading representations, the Video Content is sold at a premium price, upon information and belief, at an average of $14.99 per movie (compared to only $5.99 to rent the same Video Content), compared to other similar Video Content and services represented in a non-misleading way.

## JURISDICTION AND VENUE

21.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

22.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]"

23.     Plaintiff Amanda Caudel is a citizen of California.

24.     Defendant is a Delaware corporation with a principal place of business in Seattle,

1    King County, Washington and is a citizen of Washington.

2            25.    Venue is proper because Plaintiff and many Class members reside in this District

3    and Defendant does business in this District and State.

4            26.    This court has personal jurisdiction over Defendant because it conducts and

5    transacts business, contracts to supply and supplies goods within California.

6            27.    A substantial part of events and omissions giving rise to the claims occurred in this

7    District.

8                                              **PARTIES**

9            28.    Plaintiff Amanda Caudel is a citizen of  Fairfield, California in Solano County.

10           29.    Defendant Amazon.com, Inc. is a Delaware corporation with a principal place of

11   business in Seattle, King County, Washington.

12           30.    During the relevant statutes of limitations, Plaintiff purchased the Video Content

13   within her district and/or State for personal consumption and/or use in reliance on the

14   representations that access to the Video Content upon its purchase would not be revoked by

15   Defendant or others.

16                                     **CLASS ALLEGATIONS**

17           31.    The class consists of all California residents who purchased Video Content from

18   Defendant from April 25, 2016 to the date of class certification and trial ("the Class")  Excluded

19   from the Class are: governmental entities; Defendant; any entity in which Defendant has a

20   controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-

21   conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer

22   presiding over this matter and the members of their immediate families and judicial staff.

23           32.    Common questions of law or fact predominate and include whether Defendant's

24   representations were and are misleading and if Plaintiff and Class members are entitled to damages.

25           33.    Plaintiff's claims and basis for relief are typical to other members because all were

26   subjected to the same unfair and deceptive representations and actions by Defendant.

27           34.    Plaintiff is an adequate representative because her interests do not conflict with other

28                                                  6

1    members.

2        35.    No individual inquiry is necessary since the focus is only on Defendant's practices

3    and the Class is definable and ascertainable.

4        36.    Individual actions would risk inconsistent results, be repetitive and are impractical

5    to justify, as the claims are modest relative to the scope of the harm.

6        37.    Plaintiff's counsel is competent and experienced in complex class action litigation

7    and intends to adequately and fairly protect Class members' interests.

8        38.    Plaintiff seeks class-wide injunctive relief because the practices continue.

9                                    **CLAIMS**

10                                  **FIRST CLAIM**

11            **Violation of California's Consumers Legal Remedies Act,**

12                       **Cal. Civ. Code § 1750 *et seq.***

13                          **On Behalf of the Class**

14                       **Seeking Injunctive Relief Only**

15   39.    Plaintiff repeats each and every allegation contained in the paragraphs above and

16          incorporates such allegations by reference herein.

17       40.    Plaintiff brings this claim on behalf of the Class for violation of California's

18   Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA").

19       41.    This claim is for injunctive relief only, pursuant to California Civil Code section

20   1782(d).

21       42.    Under the CLRA, "services" means "work, labor, and services for other than a

22   commercial or business use, including services furnished in connection with the sale or repair of

23   goods." Cal. Civ. Code § 1761(b).

24       43.    The component of Amazon Prime Video that enables online playing of "Purchased

25   Videos" or Video Content is a "service" under the CLRA.

26       44.    Under the CLRA, "consumer" means "an individual who seeks or acquires, by

27   purchase or lease, any goods or services for personal, family, or household purposes." *Id.* § 1761(d).

28                                          7

45.     Plaintiff and the Class members are "consumers" under the CLRA.

46.     Under the CLRA, "person" means "an individual, partnership, corporation, limited liability company, association, or other group, however organized." *Id.* § 1761(c).

47.     Defendant is a "person" under the CLRA.

48.     Under the CLRA, "transaction" means "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e).

49.     Defendant, on the one hand, and Plaintiff and the Class members, on the other hand, engaged in "transactions" under the CLRA because, among other reasons, Defendant agreed to sell, and pursuant to that agreement sold, Video Content to Plaintiff and the Class members.

50.     Defendant's actions, representations, omissions, and conduct have violated the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods and services to consumers.

51.     Under California Civil Code section 1770(a):

> (a) The following unfair methods of competition and unfair or
> deceptive acts or practices undertaken by any person in a
> transaction intended to result or which results in the sale or lease of
> goods or services to any consumer are unlawful:
>
>        \*   \*   \*   \*   \*
>
> (5) Representing that goods or services have sponsorship, approval,
> characteristics, ingredients, uses, benefits, or quantities which they
> do not have . . . .

*Id.* § 1770(a).

52.     As detailed above, Defendant has violated California Civil Code section 1770(a)(5) by representing that the Video Content has characteristics and benefits that they do not have, i.e., Defendant made representations to Plaintiff and the Class members indicating that the Video Content had been "Purchased" and, as such, that it would be available for viewing online

8

1    indefinitely, when in fact Defendant knew that the Video Content could become unavailable for

2    viewing due to content provider licensing restrictions or other reasons.

3         53.    Defendant violated the CLRA by making the representations and omissions it made

4    at the Video Content point-of-sale detailed above when it knew, or should have known, that its

5    representations and omissions were false and misleading.

6         54.    Plaintiff and the Class members believed Defendant's representations that the Video

7    Content would viewable online indefinitely.

8         55.    Plaintiff and the Class members would not have purchased the Video Content, but

9    for the misleading representations and/or omissions by Defendant detailed above.

10        56.    The Video Content Plaintiff and the Class members received was worth less than

11   the Video Content for which they paid. Plaintiff and the Class members paid a premium price on

12   account of Defendant's misrepresentations and/or omissions detailed herein.

13        57.    Plaintiff and the Class members were injured in fact and lost money as a result of

14   Defendant's representations and/or omissions about the Video Content detailed above. Plaintiff and

15   the Class members paid for Video Content they thought they were purchasing and, as such, would

16   be available for viewing indefinitely, when in fact Defendant knew that the Video Content could

17   become unavailable for viewing due to content provider licensing restrictions or other reasons.

18        58.    Plaintiff, on behalf of the Class members, requests that the Court enjoin Defendant

19   from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to

20   California Civil Code section 1780(a)(2). If the Court does not restrain Defendant from engaging

21   in these practices in the future, Plaintiff and the Class members will be harmed in that they will

22   continue to believe they are purchasing Video Content for viewing indefinitely, when in fact, the

23   Video Content can be made unavailable at any time.

24        59.    Therefore, Plaintiff prays only for injunctive relief consistent with the relief that the

25   California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) ) and the

26   Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

27

28                                              9

**SECOND CLAIM**

**Violation of California's False Advertising Law,**

**Cal. Bus. & Prof. Code § 17500 *et seq.***

**On Behalf of the Class**

60.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

61.     Plaintiff brings this claim on behalf of the Class for violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (the "FAL").

62.     At all relevant times, Defendant has engaged in advertising and marketing representing that the Video Content may be purchased by consumers for viewing online indefinitely.

63.     Defendant engaged in its advertising and marketing with intent to directly induce consumers, including Plaintiff and the Class members, to purchase the Video Content based on Defendant's false and misleading representations and omissions.

64.     In making and disseminating the representations and omissions detailed herein, Defendant knew or should have known that the representations and omissions were untrue or misleading.

65.     Plaintiff and the Class members believed Defendant's representations that they had purchased the Video Content and, accordingly, the Video Content would be available for viewing indefinitely.

66.     Plaintiff and the Class members would not have purchased the Video Content, but for the misleading representations and/or omissions by Defendant detailed above.

67.     The Video Content Plaintiff and the Class members purchased was worth less than the Video Content for which they paid. Plaintiff and the Class members paid a premium price on account of Defendant's misrepresentations and/or omissions detailed herein.

68.     Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's representations and/or omissions about the Video Content detailed above. Plaintiff and

10

the Class members paid for Video Content that could be viewed online indefinitely but did not receive such a product because the Video Content may become unavailable due to potential content provider licensing restrictions or for other reasons.

69.     Plaintiff, on behalf of the Class members, requests that the Court enjoin Defendant from engaging in the false and misleading advertising and marketing set forth herein. If the Court does not restrain Defendant from engaging in such conduct, Plaintiff and the Class members will be harmed in that they will continue to purchase Video Content they believe will be available indefinitely, when in fact, the Video Content can be made unavailable at any time.

70.     Therefore, Plaintiff prays only for injunctive and other public relief consistent with the relief (such as restitution) that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

**THIRD CLAIM**

**Violation of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

**Unlawful, Unfair, and Fraudulent Prongs**

**On Behalf of the Class**

71.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

72.     Plaintiff brings this claim on behalf of the Class for violation of the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL").

73.     The circumstances giving rise to Plaintiff's and the Class members' allegations include Defendant's corporate policies regarding the sale and marketing of Video Content for purchase.

74.     Under the UCL, "unfair competition" means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

11

1    act prohibited by" the FAL. Cal. Bus. & Prof. Code § 17200.

2         75.    By engaging in the acts and practices described herein, Defendant has committed

3    one or more acts of "unfair competition" as the UCL defines the term.

4         76.    Defendant has committed "unlawful" business acts or practices by violating the

5    CLRA and the FAL, as detailed above.

6         77.    Defendant has committed "unfair" business acts or practices by, among other things:

7              a.    engaging in conduct for which the utility of the conduct, if any, is

8                    outweighed by the gravity of the consequences to Plaintiff and the members

9                    of the Class;

10             b.    engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or

11                   substantially injurious to Plaintiff and the members of the Class; and

12             c.    engaging in conduct that undermines or violates the spirit or intent of the

13                   consumer protection laws that this Class Action Complaint invokes.

14        78.    Defendant has committed unlawful, unfair, and/or fraudulent business acts or

15   practices by, among other things, engaging in conduct Defendant knew or should have known was

16   likely to and did deceive reasonable consumers, including Plaintiff and the Class members.

17        79.    As detailed above, Defendant's unlawful, unfair, and/or fraudulent practices include

18   making false and misleading representations and/or omissions.

19        80.    As detailed above, Defendant has made material representations that the Video

20   Content purchased by Plaintiff and the Class members would be available for viewing online

21   indefinitely.

22        81.    Defendant made the representations and omissions with intent to directly induce

23   consumers, including Plaintiff and the Class members, to purchase the Video Content based on the

24   false and misleading representations and omissions.

25        82.    Plaintiff and the Class members believed Defendant's representations that the Video

26   Content would be available for viewing online indefinitely.

27        83.    Plaintiff and the Class members would not have purchased the Products, but for the

28                                              12

misleading representations and/or omissions by Defendant detailed above.

84.     The Video Content Plaintiff and the Class members received were worth less than the Video Content for which they paid. Plaintiff and the Class members paid a premium price on account of Defendant's misrepresentations and/or omissions detailed herein.

85.     Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's violations of the unlawful, unfair, and/or fraudulent prongs of the UCL that are set out above. Plaintiff and the Class members paid for Video Content that they believed would be available for viewing online, but did not receive such a product because the Video Content may become unavailable due to potential content provider licensing restrictions or for other reasons.

86.     Plaintiff, on behalf of the Class members, requests that the Court enjoin Defendant from engaging in the false and misleading advertising and marketing set forth herein. If the Court does not restrain Defendant from engaging in such conduct, Plaintiff and the Class members will be harmed in that they will continue to purchase Video Content they believe will be available indefinitely, when in fact, the Video Content can be made unavailable at any time.

87.     Therefore, Plaintiff prays only for injunctive relief  and other public relief (such as restitution) consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

13

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class members, respectfully requests that the Court enter an Order:

A.      certifying the proposed Class under Federal Rule of Civil Procedure 23(a) and (b)(2), as set forth above;

B.      declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.      declaring that Defendant has committed the violations of law alleged herein;

D.      providing for any and all injunctive relief the Court deems appropriate;

E.      awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees;

F.      awarding pre- and post-judgment interest to the extent the law allows; and

G.      providing such further relief as this Court may deem just and proper.

1

## JURY TRIAL DEMAND

2

Plaintiff demands a jury trial on all causes of action so triable.

3

Dated:  April 24, 2020

4

**REESE LLP**

5

*/s/ Michael R. Reese*
Michael R. Reese (SBN 206773)

6

Carlos F. Ramirez (*Pro hac vice* to be filed)
100 West 93rd Street, 16th Floor

7

New York, New York  10025
Telephone:  (212) 643-0500

8

Email:  *mreese@reesellp.com*
        *cramirez@reesellp.com*

9

10

**REESE LLP**
George V. Granade (Cal. State Bar No. 316050)

11

8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211

12

Telephone:  (310) 393-0070
Email:  *ggranade@reesellp.com*

13

14

**SHEEHAN & ASSOCIATES, P.C.**

15

Spencer Sheehan (*Pro hac vice* to be submitted)
505 Northern Blvd Ste 311

16

Great Neck New York 11021-5101
Telephone: (516) 303-0552

17

Email: *spencer@spencersheehan.com*

18

*Counsel for Plaintiff and the Proposed Class*

19

20

21

22

23

24

25

26

27

28

15

**AFFIDAVIT OF MICHAEL R. REESE**

**PURSUANT TO CALIFORNIA CIVIL CODE § 1780**

Michael R. Reese declares:

1.    I am an attorney duly admitted to practice before this Court.  I am a partner in the law firm of Reese LLP, attorneys of record for Plaintiff Amanda Caudel.

2.    I am one of the attorneys principally responsible for the handling of this matter.  I am personally familiar with the facts set forth in this declaration, and if called as a witness, I could and would competently testify to the matters stated herein.

3.    This action has been commenced in a county described in California Civil Code section 1780 as a proper place for the trial of the action.  The transactions or a substantial portion thereof occurred in Solano County, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 24, 2020, at New York, New York

*/s/ Michael R. Reese*
Michael R. Reese

16