UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amanda Caudel, | No. 20-cv-00848-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| Amazon.com, Inc., | |
| Defendant. | |

In April 2020, Amanda Caudel filed this putative class action against defendant Amazon.com, Inc. (Amazon) for violation of California consumer laws by allowing customers to purchase electronic media content at a higher fee than rented content, when the purchased content might become unavailable to the consumer at a later date. Amazon moves to dismiss the complaint on the grounds that plaintiff lacks standing to bring the suit and her contract-based claims are non-cognizable. For the reasons explained below, the court concludes Caudel does not have standing to bring this suit and therefore the motion is **granted.**

**I.    BACKGROUND**

Amazon is a large online retailer that provides many services, including the ability to rent and purchase video content[1] through "Prime Video," a component of its company website.

---

[1] For clarity, the court adopts the term "video content" to describe the electronic media referenced in the complaint. *See* Compl. ¶ 1 (Amazon "is the largest American online retailer and

1

1 Compl. ¶¶ 1, 43, ECF No. 1.  Caudel is a consumer who has purchased video content via Prime
2 Video.  *See id.* ¶ 55.  She resides in Fairfield, California.  *Id.* ¶ 28.  Amazon is a Delaware
3 corporation with a principal place of business in Seattle, Washington.  *Id.* ¶ 29.

4    Caudel alleges Amazon charges around $10 less for renting electronic video content rather
5 than purchasing it.  *Id.* ¶¶ 2–3, 20.  According to the complaint, if a consumer purchases video
6 content by clicking the "buy" button, the content is instantly available in the consumer's library
7 without the purchaser's needing to accept any terms or conditions.  *Id.* ¶ 5.  A consumer can
8 access her purchased video content by navigating to the "Video Purchases & Rentals" page,
9 which includes a collection of all the consumer's purchased and rented content.  *Id.* ¶¶ 6–7.

10    Caudel also alleges Amazon fraudulently represents to its customers that purchased video
11 content will be available indefinitely.  *Id.* ¶¶ 52, 62, 80.  Claudel maintains that the terms "buy"
12 and "purchase" suggest the consumer has "full access to the Video Content, and like any bought
13 product, that access cannot be revoked."  *Id.* ¶¶ 8–9.  According to the complaint, this
14 representation is misleading because access to certain purchases of video content can be revoked
15 by either Amazon or a third party.  *Id.* ¶ 9.  Amazon allegedly misleads consumers who would not
16 agree to the higher fee if they understood that purchased video content might disappear from their
17 digital libraries at some point in the future.  *Id.* ¶¶ 16–20.  Caudel contends she was not informed
18 about this potential revocation of her access to video content when she clicked the "purchase"
19 button.  *Id.* ¶ 19.

20    According to an affidavit submitted by an Amazon litigation paralegal attached to
21 Amazon's motion to dismiss, Caudel signed up for an Amazon account in 2016, has purchased 36
22 videos, and each remains available to her.  Paralegal Marcela Viegas Decl. ¶ 14, ECF No. 14-2.
23 Amazon contends Caudel also purchased "13 non-rental purchases of digital content" after the
24 lawsuit was filed.  *Id.* ¶ 15.  Caudel's access to her purchased videos has not been revoked.  *Id.*
25 ¶ 14.  Caudel does not contest this representation.  *See generally* Opp'n, ECF No. 18.

26

includes among its myriad services the option for consumers to rent or buy movies, television
shows and other media (the 'Video Content') for a fee."

Caudel brings three claims on behalf of the putative class: (1) a violation of California's Consumer Legal Remedies Act (2) a violation of the state's False Advertising Law and (3) a violation of the state's Unfair Competition Law.  Compl., ¶¶ 39–87; Civ. Code § 1750; Cal. Bus. & Prof. Code §§ 17500, 17200.  Amazon moves to dismiss on the basis plaintiff does not allege standing or a cognizable legal theory.  Mem. Supp. Mot. to Dismiss (Mem.) at 1–2, ECF No. 14-1.  The matter was fully briefed, and submitted without oral argument.  Opp'n; Reply, ECF No. 24.  Both parties also submitted notices of supplemental authority.  Caudel Suppl. Auth., ECF No. 29; Amazon Suppl. Auth., ECF No. 33. Because the question of standing is dispositive, the court addresses only that issue below.

## II.     LEGAL STANDARD

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013).  The Supreme Court has "insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 565 n.2 (1992).

The party asserting jurisdiction bears the burden of establishing the court has jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Standing to sue is a necessary component of the court's subject matter jurisdiction.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  Accordingly, if a plaintiff lacks standing, the court lacks subject matter jurisdiction under Article III of the U.S. Constitution.  *Id*.

## III.    ANALYSIS

In deciding a Rule 12(b)(1) motion, the court may consider materials beyond the pleadings without converting it to a summary judgment motion.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  To aid the court in deciding the matter, parties may provide "proof of jurisdictional facts . . . by affidavit, declaration, or any other evidence properly before the court, in addition to the pleadings challenged by the motion." *Green v. United States*, 630 F.3d 1245, 1248 n.3 (9th Cir. 2011).

1    Here there is only one jurisdictional fact the court need consider, and that is the
undisputed fact that Caudel has never lost access to any of the videos she purchased. As noted
above, to establish standing a plaintiff "must have suffered an injury in fact—an invasion of a
legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent,
not conjectural or hypothetical." *Lujan*, 504 U.S. 555 at 560 (internal citations omitted). Injury
in fact is the "first and foremost of standing's three elements." *Spokeo, Inc. v. Robins*, 578 U.S.
330 (2016). Plaintiffs carry the burden of demonstrating standing at all stages of litigation.
*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021).

Economic injuries may be sufficient to constitute an injury-in-fact. Here, Caudel argues her complaint sufficiently alleges an overpayment injury-in-fact. Compl. ¶ 84 ("The Video Content Plaintiff and the Class members received were worth less than the Video Content for which they paid."); Opp'n at 11 ("[T]he Complaint makes clear that Plaintiff's injury-in-fact is that she overpaid for Video Content because of Defendant's deceptive conduct"). The Ninth Circuit recognizes a plaintiff can successfully plead an economic injury when she alleges "she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020); *Brown v. Starbucks Corp.*, No. 18-2286, 2019 WL 4183936, at *4 (S.D. Cal. Sept. 3, 2019) ("Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action.").

However, in overpayment theory cases, the majority of courts have consistently found economic injury when the products contain an actual defect and are allegedly worth less than what the consumer paid. *See, e.g., Maya v. Centex Corp.,* 658 F.3d 1060, 1070 (9th Cir. 2011) (plaintiffs successfully pled an economic injury-in fact in alleging they overpaid for their homes at the time of sale, given the value of their property was lower than what they paid); *but see Andino v. Apple, Inc.,* No. 20-01628, 2021 WL 1549667, at *2 (E.D. Cal. Apr. 20, 2021) (holding plaintiff had standing when he alleged he overpaid for purchased video content on Apple when

4

the content was not available to him indefinitely).[2]  The cases plaintiff cites in her opposition do not provide otherwise. *Brown*, 2019 WL 4183936, at *4 (plaintiff who purchased Starbucks product with an artificial flavor had standing when she paid for the product and believed it did not contain an artificial flavor); *Takano v. Procter & Gamble Co.*, No. 17-00385, 2018 WL 5304817, at *1 (E.D. Cal. Oct. 24, 2018) (plaintiffs alleged an overpayment theory after purchasing hair products with unnatural ingredients when defendants allegedly represented the products as natural).

Here Caudel includes language in her complaint that she has "receive[d] a product worth less than [its actual] value." *McGee,* 982 F.3d at 706 (9th Cir. 2020); *see* Compl. ¶ 84.  But taking account of her factual allegations and bearing in the mind the plausibility standard, plaintiff pleads at most "a potential risk" of losing video content, which is "not concrete and particularized" as to herself. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960, 961 (9th Cir. 2009) ("Further, the alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner.").  Her videos remain in her library, and her access has never been revoked.

The allegations in the complaint also do not sufficiently allege an "actual or imminent" risk. *See Lujan*, 504 U.S. 555, 555.  Risk of future harm that is too speculative does not support Article III standing. *TransUnion LLC*, 141 S. Ct. at 2211–12.  On these allegations, the court cannot find Caudel successfully pleads an injury-in-fact as she has not demonstrated she has overpaid for the videos she purchased nor is she in imminent danger of losing a video from her library.

Plaintiffs are however granted leave to amend. *See, e.g., Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (holding that leave to amend should

---

[2] In *Andino,* 2021 WL 1549667, the plaintiff also did not have his access to his video content revoked.  In its reasoning, the *Andino* court relied on a Ninth Circuit case*, Reid v. Johnson & Johnson*, 780 F.3d 952, 955 (9th Cir. 2015).  In *Reid,* 780 F.3d 952, the court held a plaintiff had standing when he alleged he relied on defendant's fraudulent representation that there was no trans fat in a product, but the product did in fact contain trans fat.  *Id.*

5

be permitted absent "strong evidence" of delay, bad faith, repeated failures to cure deficiencies, prejudice, or futility). If Caudel is able to plead she has lost access to her video content or is facing an imminent risk of losing access to her purchased video content, she may amend the complaint to allege as much within 30 days. Alternatively, another lead plaintiff may be identified who has been injured personally and can plead "not that injury has been suffered [only] by other, unidentified members of the class to which they belong and which they purport to represent." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.,* 754 F. Supp. 2d 1145, 1167 (C.D. Cal. 2010).

## IV.  CONCLUSION

For the above reasons, the court grants defendant's motion to dismiss. Plaintiffs may file an amended complaint within 30 days, if they are able to do so while complying with Federal Rule of Civil Procedure 11.

This order resolves ECF No. 14.

IT IS SO ORDERED.

DATED: October 15, 2021.

CHIEF UNITED STATES DISTRICT JUDGE